OPINION OF THE COURT — by the
How. A, MONTGOMERY.
Robert A. Lynn recovered a judgment against Christopher H. Kyle, for $¡5033 34 cents, at May term, 1823, of Adams Circuit Court, on which, he sued out execution returnable at November term, 1823, which execution was levied on a house and lot in the town of Natchez — but there was no sale, for want of time. In June, 1824, Kyle filed a bill in chancery, and obtained an injunction, staying all further proceeding on the part of Lynn to enforce satisfaction of his judgment. The suit in chancery was finally dismissed by this court, and the injunction dissolved December term, 1830. Kyle having died in the mean time, a scire facias was issued returnable at May term, 1831, of Adams Circuit Court, at which term Lynn’s judgment at law was revived.
John E. Hunter recovered a judgment against Christopher H. Kyle, for two thousand dollars, at the November term, 1828, of Adams Circuit Court, which was decided by scire facias, against Kyle’s executors, at the November term, 1829. A pluries fieri facias issued thereon, returnable at May term, 1831, on which the sheriff returned that he had levied on certain slaves, and sold them on the 3d of January, 1831, for. $1225, which money he had ready to pay over by order of the court. He further returned, that he had levied on and sold a certain slave for $313, on the 17th of January,’ 1831. The payment of these sums was demanded shortly after the day of sale by the plaintiff’s attorney, but was refused by the sheriff.
It was proved that the slaves on which Hunter’s execution was levied, were the property of C. H Kyle, at the time Lynn’s execution! was in the-sheriff’s hands, in 1825.
*549 Robert A. Lynn made this motion against the sheriff, for a judgment for the whole sum, made on and by virtue of Hunter’s execution, to be appro-, priated to the satisfaction of his judgment against Kyle’s executors; and the court below directed that Hunter was entitled to the money, and overruled the motion — from which decision the plaintiff appealed to this court.
- At common law, it was the duty of the sheriff to return all money levied under execution into the court from which the writ emanated; and our statute has altered the common law so far as to require him to pay the money over to the plaintiff in execution.
It is often embarrassing to the sheriff to decide between conflicting claimants to money in his hands, where there have been at the same time several executions against the same person, and not sufficient levied to satisfy all. To remedy or obviate this difficulty, another statute gives the right of preference to the execution first delivered to the sheriff; and to prevent disputes and uncertainty as to which has precedence, requires the sheriff to endorse on every execution the date he received it; and when two executions against .the same defendant are handed to him on the same day, to note that which he first received.(«) Under this statute it is clearly the duty of the sheriff to levy that execution first which is first received, and proceed to make the money and pay it over to the plaintiff in execution, unless notice is given him that another person claimed the money by virtue of some other legal right; in which case it is the safest and best course to return the money to court, to be there appropriated by order of court; for the sheriff has no discretion by the common law, or under our statutes, but must pay the money to the plaintiff in the execution on which it was made, (b) The court, when the money is under its control, has a judicial discretion, and will often appropriate the money to the payment of a different judgment.
An execution when handed to the sheriff becomes a general lien on all the defendant’s property.(c) But we do not understand that this general lien constitutes of itself a property dr right in the property itself; it only confers a right to levy on the property, to the exclusion of other adverse infe-
rí Revised Code, 197.
b Ibid. 210-
c Ibid. 197.
*550 rests subsequently acquired; and when the levy'is actually made, the title relates back to the time of the execution in the sheriff’s hands, so as to cut out intermediate incumbrances. Subject to this, the debtor has full power to sell; — his title is not divested or transferred by the judgment or execution unexecuted to the judgment creditor. It may be levied on by any other execution creditor, and the purchaser under such junior execution will hold it against every other person except the creditor in the elder execution, and even against him, until he consummates his title by a levy on the property itself.
In that event, the prior levy of the junior execution is as to the senior execution void, and the purchaser loses all right under it. If a debtor should' sell the property, an execution creditor cannot follow the proceeds into the ’ hands of the vendor or vendee, or claim it in the hands of the latter; and there is certainly as little reason for following it in the hands of an execution creditor-. The only remedy of the execution creditor is against the property itself, by making that a specific title which was before a general lien, (d) And he can only claim the proceeds of the property when it has been sold on his own execution, and ought to be applied to its satisfaction, except where both executions-are in the sheriff ?s hands at the same time; then a sale ünder the junior execution defeats the lien of the elder,(e) on the presumption that the elder has been satisfied, or it would have been first levied and satisfied. Under such circumstances, and when the elder execution creditor has been guilty of no improper delay or neglect, the court will, on motion, order the money made on a junior execution to be appropriated to the satisfaction of the elder. But when the operative energy of an execution has been suspended by an injunction, a sale under a junior execution does not affect the lien acquired by such elder execution; but the property in the hands of any person remains liable to a levy when the injunction is removed; therefore Lynn has no right to this money under his execution, which only amounted to a general lien on the property of Ryle,, except that property levied on, by which the lien was thus far rendered specific.
d 1 Peter’s Rep. 443.
Ld. Raymond, 251.
*551 The motion by Lynn against the sheriff could not be sustained on another ground. The sheriff is only liable to this summary and extraordinary action, by reason of his official relations to the court, and a duty he owes to the party in that official relation; and courts cannot properly listen to complaints against the sheriff, from those to whom the sheriff owes no official duty, the non-performance of which might be a subject of just complaint.
Lynn could not, under the circumstances of his case, have required of the sheriff the performance of any official duty in relation to his claims against Kyle. Indeed, he was expressly and legally stayed from all further proceedings by injunction; consequently, the sheriff was under no legal liability to obey any of his commands, or of others connected with him, in relation to the proceeds of a statute under an execution to which Lynn was not a party. When the money was returned into court, (which was very properly done in this instance,) and no receiver appointed, but the sheriff suffered to retain it, he must be regarded in the light of the receiver, in all further proceedings in relation thereto, and is not liable to an action from any quarter until the court has directed him to whom it shall be paid. The motion should have been for a rule against Hunter, to shew cause why the money in court, by virtue of á levy and sale under the execution in his favor, should not be appropriated to the satisfaction of the execution in favor of Lynn.
The judgment of the court below affirmed.